# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | 8:06CR348 |
| vs. ) | |
| ) | **REPORT AND** |
| **LUIS F. MARTINEZ-CORTES,** ) | **RECOMMENDATION** |
| ) | |
| **Defendant.** ) | |

This matter is before the court on the defendant's Motion to Suppress [16]. An evidentiary hearing was held on February 23, 2007, the transcript of which was filed on March 8, 2007 [44]. The defendant's post-hearing brief was filed on April 23, 2007, at which time the motion was deemed submitted.

On October 3, 2006, Sarpy County officers approached the residence at 7510 Trumble Avenue to execute a no-knock search warrant. As they arrived, they saw the defendant's vehicle, a Ford Excursion, backing out of the driveway. The Excursion was stopped, and the defendant and his passenger were detained and handcuffed. The defendant was ultimately arrested on an outstanding warrant and for driving while his license was suspended or revoked. Officers found several packages of methamphetamine in the vehicle.

The defendant contends all evidence derived from this incident should be suppressed because the officers violated his Fourth Amendment rights by stopping him, detaining him, arresting him, and searching his vehicle. The government contends that the initial stop was permissible under *Terry v. Ohio*, 392 U.S. 1 (1968), and probable cause developed thereafter.

For the reasons discussed below, I recommend that the motion be denied.

## FACTUAL BACKGROUND

Deputy Sarpy County Sheriff Brian Jarrett testified that he has been with the Sheriff's Office for seven years and has been a narcotics investigator for the past three years. His duties include serving and executing search warrants. On October 3, 2006, he helped execute a no-knock warrant at 7510 Trumble Avenue in Sarpy County at about 7:45 p.m. Trumble Avenue is a dead-end street running north from Chandler Road. There are five houses on the west side of the street and two industrial buildings on the east side of Trumble Avenue. The residence at 7510 is the third house north from the corner of Chandler Road and has a single lane driveway. The search warrant (Ex. 1) indicates that the residence was occupied by William J. Baber, described as "DOB 05/31/82, white male, 6'0", 190 lbs, brown hair, brown eyes."

Deputy Jarrett and Investigator Joe Benak drove to the residence in an unmarked pickup truck, third in line behind a marked emergency services unit (ESU) van and a marked Sarpy County Sheriff's Office cruiser driven by Corporal Fred Bishop. The cruiser's overhead flashing lights were on, but the siren was not used.

As they turned off Chandler Road onto Trumble Avenue, they saw a tannish-gold colored Ford Excursion backing out of 7510 Trumble Avenue. Jarrett testified that while the ESU vehicle was parking directly in front of 7510, the Excursion backed out of the driveway onto Trumble Avenue, facing southwest. The Ford Excursion then stopped, because the cruiser came up in front of it and stopped about 20 feet away, blocking its ability to leave the area. Jarrett and Benak were in their truck, directly behind the cruiser. It was dark outside, and the cruiser's spotlight was turned on the Excursion so they could see the occupants of the vehicle. Jarrett testified that he could clearly see the driver and a passenger in the front of the Excursion.

Jarrett, Benak, and Bishop immediately went up to the Excursion. Jarrett testified he approached the driver's side door with his weapon drawn and ordered the driver to put the vehicle in park. He drew his weapon because they had a no-knock search for 7510 Trumble Avenue, had information there were guns inside the residence, and they did not know if the main suspect, Baber, was in the vehicle or not. Jarrett was wearing plain clothes, but was also wearing a black raid vest which stated "SHERIFF" on the front and back in large white letters.

According to Jarrett, the driver did not immediately comply with the request to put the vehicle in park. Although the officers repeatedly told the driver to show them his hands, he would not do so; he kept shoving something in between his right leg and the middle console of the vehicle. After several more demands to show the officers his hands, the driver finally complied and put his hands up in the air.

The officers then ordered both the driver and the passenger out of the vehicle. The driver got out and laid on the ground, on his stomach, and was handcuffed. Deputy Jarrett explained to the driver that they were serving a narcotics search warrant and were going to need identification from him. Jarrett noted that there was "a little bit of a language barrier." The driver responded in broken English and told Jarrett he had an ID card on his person. The Nebraska identification card found in the driver's pants pocket identified him as Luis Martinez-Cortes, the defendant.

Other officers had detained the passenger in the same manner. The passenger had no identification, and there was a language barrier, but Jarrett was able to speak to him and get his name (Toribio Velazquez) and date of birth.

After gathering both parties' information, Deputy Jarrett called the dispatch center and ran a routine check for wants and warrants for both parties. The dispatcher advised that the defendant's

driving privileges had been revoked and suspended through the State of Nebraska. He also had a misdemeanor warrant through the Omaha Police Department. Deputy Jarrett then advised the defendant that he was under arrest because of the outstanding warrant, and also that his Nebraska driver's license was revoked. Defendant said nothing to Jarrett in response.

Because the defendant had been arrested and his passenger did not have a driver's license, the officers conducted a search incident to arrest of defendant's person and of the vehicle. Jarrett stated he did not find anything of significance on defendant's person and stayed directly outside the vehicle with the defendant while other officers searched the vehicle.

Jarrett did advise Sergeant Richards that the defendant had been stuffing something into the middle console area, so Richards went directly to that area, where he found a small baggie of methamphetamine. Deputy Todd Merritt searched the back seat area and found a baggie containing seven grams of methamphetamine hidden in a zip-up compartment near the back door on the driver's side.

Deputy Merritt then found a bluish-gray colored console laying on the floorboard behind the driver's seat. It was obvious the console did not belong in the Excursion because the interior of the Excursion was tan in color and the console was bluish-gray. Merritt picked the console up off the floor, shook it and heard something rattling inside. He pinched it open a little bit and he could see a large bag of methamphetamine inside.

Two venue items to the defendant were found in the dashboard console; however, the vehicle was not registered to the defendant.

Deputy Jarrett testified that the vehicle was searched while other officers executed the search warrant on the residence. The Ford Excursion had been seen at the residence during previous

surveillance, but the officers had no information that the defendant lived at the house on Trumble Avenue.

Another marked cruiser was called to transport the defendant to the Sarpy County Jail.

Investigator Joe Benak testified that he has been a narcotics investigator for almost seven years and has been employed by the Sarpy County Sheriff's Office for 16 years. He participated in executing the search warrant at 7510 Trumble Avenue on October 3, 2006. As he and Jarrett turned onto Trumble Avenue from Chandler Road, they saw a tan Ford Excursion backing down the driveway of the target residence. The Excursion backed up northbound on Trumble Avenue and came to a stop, so it could straighten out, go south and leave Trumble Avenue. Corporal Bishop pulled the marked cruiser directly in front of the Excursion and trained his emergency lights and spotlights on the Excursion. Jarrett and Benak pulled up directly behind Bishop's cruiser.

Benak testified that there were two individuals in the front seat of the Excursion. The officers intended to stop and detain the occupants because the target residence was close in proximity to the Excursion, and they had just seen the vehicle back out of the driveway of the target residence. Benak, Jarrett and Bishop approached the Ford Excursion with their weapons drawn. Speaking in English, they began shouting verbal commands to the occupants to let the officers see their hands. The occupants did not comply immediately. Benak testified that their hands were out of view, but he could see "movements." He could see their arms moving. According to Benak, it was very obvious there was movement going on between the occupants.

Benak testified that they continued shouting verbal commands for the occupants to show their hands. After several times, they eventually showed the officers their hands and were then ordered to put their hands out of the windows, which they did.

There was a trailer parked just to the east of the Ford Excursion, with only a very narrow area between the Excursion and the trailer. Benak walked around the back of the trailer so he could cover the driver while Jarrett was still in front of the Excursion. He wound up in a cover position directly even with the driver's side door, where he watched the driver exit the vehicle and get on the ground in response to Jarrett's order. Jarrett then handcuffed the driver. The officers found no other occupants in the Ford Excursion.

Investigator Benak testified that both occupants of the Excursion were kept on the ground until the ESU members had cleared the residence and taken everyone into custody. Benak later helped search the residence.

While at the Trumble Avenue address, Benak advised the defendant, in English, that he had a warrant through the Omaha Police Department for failure to appear for a traffic citation, and his driver's license was suspended and revoked through the State of Nebraska. Benak told the defendant he would be placed under arrest for those charges and would be taken to the Sarpy County Jail. In Benak's opinion, the defendant understood what he was being told because he responded that he understood there might be a warrant out for him, but his attorney was working on it. When Benak advised him about his license being suspended and revoked, the defendant stated he knew that to be true.

Benak also interviewed the defendant at the Sarpy County Jail. According to Benak, the defendant agreed to make a statement and did make a statement after being Mirandized.

## LEGAL ANALYSIS

"Automobiles, as well as people, are subject to *Terry* stops." *United States v. Watts*, 7 F.3d 122, 125 (8th Cir. 1993), *cert. denied*, 510 U.S. 1078 (1994). As the Eighth Circuit recently observed,

> "Mere presence at the scene of a crime is not probable cause for a warrantless arrest." *United States v. Luschen*, 614 F.2d 1164, 1171 (8th Cir. 1980). However, officers can stop and detain a suspect without a warrant, if the officer has reasonable suspicion, supported by articulable facts, that criminal activity "may be afoot." *Terry v. Ohio*, 392 U.S. 1, 30 (1968). Reasonable suspicion is based on the totality of the circumstances. *United States v. Cortez*, 449 U.S. 411 (1981); [*United States v. Barker*, 437 F.3d 787, 790 (8th Cir. 2006)]. The totality of the circumstances are viewed in light of the officer's experience and familiarity with drug trafficking. *United States v. Bailey*, 417 F.3d 873, 877 (8th Cir. 2005). Even a combination of innocent conduct can provide reasonable suspicion of criminal activity. *Id.* at 878.

*United States v. Castro-Gaxiola*, 479 F.3d 579, 583 (8th Cir. 2007) (parallel citations omitted). "[O]fficers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation." *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000).

In this case, Investigator Benak had already obtained a no-knock warrant for 7510 Trumble Avenue to search the property, and/or vehicles on the property, and/or curtilage for items which would indicate a conspiracy to sell, distribute and/or transport methamphetamine and/or other controlled substances. Officers had seen the Ford Excursion at the residence during previous surveillances. The Excursion was seen backing out of the driveway at 7510 Trumble Avenue just as the Sarpy County officers arrived to execute the search warrant. It was dark outside, and they could not tell whether William Baber (the individual named in the search warrant) was in the vehicle. Under the totality of the circumstances, and considering the officers' experience and familiarity with

drug trafficking, I find the officers had reasonable suspicion to stop the vehicle pursuant to *Terry v. Ohio*.

A *Terry* stop that is justified at its inception must also be sufficiently limited in scope and duration. *United States v. Ramires*, 307 F.3d 713 (8th Cir. 2002). The officers may conduct an investigation which is "'reasonably related in scope to the circumstances which justified the interference in the first place.'" *United States v. Jones*, 269 F.3d 919, 924 (8th Cir. 2001) (quoting *Terry*, 392 U.S. at 20). After the purpose of the *Terry* stop is completed, continued detention of the individuals is an unreasonable extension of the scope of the investigation unless something that occurred during the initial stop generated the necessary reasonable suspicion to justify further detention. *Id.* at 925.

In this instance, the defendant's Ford Excursion was stopped nose-to-nose with a marked police cruiser that had its emergency lights flashing and spotlights trained on the Excursion. The occupants of the Excursion did not immediately comply with the officers' commands to put the Excursion in park and to show their hands. Instead, the officers observed the occupants' arms moving. It appeared to Jarrett that the defendant was shoving something in between his right leg and the middle console. It was "obvious" to Benak that there was movement going on between the occupants.

The investigative methods employed in conducting a *Terry* stop should be the least intrusive means reasonably available to verify or dispel the officers' suspicion in a short period of time. *See United States v. Bloomfield*, 40 F.3d 910, 916 (8th Cir. 1994). Using handcuffs, however, can be a reasonable precaution during a *Terry* stop. *United States v. Navarrete-Barron*, 192 F.3d 786, 791 (8th Cir. 1999). Investigator Benak had already obtained a no-knock warrant for 7510 Trumble

-8-

Avenue based on the likely presence of firearms at the residence. The Ford Excursion was previously associated with the residence, and its occupants had not cooperated with the officers' instructions to show their hands. Under the circumstances, the limits of a *Terry* stop were not exceeded when the defendant was ordered to exit the vehicle and was handcuffed for safety reasons.

Based on the totality of the circumstances, and particularly in light of the defendant's failure or refusal to immediately park the vehicle and show his hands, I specifically reject defendant's argument that the officers should have immediately abandoned the *Terry* stop when they realized that William Baber was not in the vehicle.

Having reasonable suspicion to conduct the *Terry* stop, the deputies were entitled to ask both occupants of the vehicle for identification. *See United States v. Dawdy*, 46 F.3d 1427, 1430 (8th Cir.), *cert. denied*, 516 U.S. 872 (1995). The identification provided led to the officers' discovery that the defendant had no valid driver's license and that there was an active warrant for his arrest.

Turning to the search of the Ford Excursion,

> An officer, incident to a valid *Terry* stop, may search "the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden ... if the police officer possesses a reasonable belief based on 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant' the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons." *Michigan v. Long*, 463 U.S. 1032, 1049 (1983) (quoting *Terry*, 392 U.S. at 21).

*United States v. Watts*, 7 F.3d 122, 125 (8th Cir. 1993) , *cert. denied*, 510 U.S. 1078. The console located next to the driver's seat is an area where a weapon might be placed or hidden. A package of methamphetamine was found in this console, providing additional probable cause to arrest the defendant and/or search the vehicle.

The "automobile exception" to the warrant requirement also authorizes officers to search a vehicle without a warrant if they have probable cause to believe the vehicle contains evidence of criminal activity. *United States v. Hill*, 386 F.3d 855, 858 (8th Cir. 2004). "'If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth amendment ... permits police to search the vehicle without more.'" *Maryland v. Dyson*, 527 U.S. 465, 467 (1999) (quoting *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996)).

Finally, under *New York v. Belton*, 453 U.S. 454, 460 (1981), "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." "[T]he police may also examine the contents of any containers found within the passenger compartment, for if the passenger compartment is within reach of the arrestee, so also will containers in it be within his reach." *Id. See also United States v. Wells*, 347 F.3d 280 (8th Cir. 2003), *cert. denied*, 541 U.S. 1081 (2004); *United States v. Orozco-Castillo*, 404 F.3d 1101 (8th Cir. 2005).

Based on these authorities, I conclude that the contraband found in the Ford Excursion was lawfully seized.

## RECOMMENDATION

In summary, the Sarpy County officers conducted a lawful *Terry* stop of the defendant's vehicle. The scope and duration of the *Terry* stop were not unlawfully expanded. The defendant was lawfully arrested pursuant to an active warrant. The search of the vehicle was permissible incident to the *Terry* stop, under the automobile exception to the warrant requirement, and incident to the lawful custodial arrest of the defendant.

**IT THEREFORE IS RECOMMENDED** that defendant's Motion to Suppress [16] be denied.

Pursuant to NECrimR 57.3, a party may object to this Report and Recommendation by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten (10) business days after being served with the recommendation. The statement of objection shall specify those portions of the recommendation to which the party objects and the basis of the objection. The objecting party shall file contemporaneously with the statement of objection a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed de novo and a different disposition made.

**DATED May 10, 2007.**

        **BY THE COURT:**

        **s/ F.A. Gossett**
        **United States Magistrate Judge**